No. 23-40582

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

Honorable Terry Petteway; Honorable Derrick Rose; Honorable
Penny Pope,

*Plaintiffs–Appellees*

v.

Galveston County, Texas; Mark Henry, *in his official capacity as
Galveston County Judge*; Dwight D. Sullivan, *in his official capacity
as Galveston County Clerk*,

*Defendants–Appellants*

---

United States of America,

*Plaintiff–Appellee*

v.

Galveston County, Texas; Galveston County Commissioners Court;
Mark Henry, *in his official capacity as Galveston County Judge,*

*Defendants–Appellants*

---

Dickinson Bay Area Branch NAACP; Galveston Branch NAACP;
Mainland Branch NAACP; Galveston LULAC Council 151; Edna
Courville; Joe A. Compian; Leon Phillips,

*Plaintiffs–Appellees*

---

On appeal from the United States District Court
for the Southern District of Texas
USDC Nos. 3:22-CV-00057, 3:22-CV-00093, 3:22-CV-00117

## APPELLANTS' OPPOSED PETITION FOR EN BANC HEARING

Joseph Russo, Jr.
Jordan Raschke Elton
Greer, Herz & Adams LLP
1 Moody Plaza, 18th Fl.
Galveston, Texas 77550
(409) 797-3200 (Phone)

Angie Olalde
Greer, Herz & Adams, LLP
2525 South Shore Blvd., Ste. 203
League City, Texas 77573
(409)797-3262 (Phone)

Joseph M. Nixon
J. Christian Adams
Maureen Riordan
Public Interest Legal Foundation
107 S. West St., Ste. 700
Alexandria, VA 22314
713-550-7535 (Phone)

## **CERTIFICATE OF INTERESTED PERSONS**

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1. Appellants

   a. Galveston County, Texas,

   b. the Galveston County Commissioners Court

   c. Galveston County Judge Mark Henry

   d. Galveston County Clerk Dwight Sullivan

2. Trial and Appellate Counsel for Appellants

   a. Joseph Russo, Jr.

   b. Andrew Mytelka

   c. Angela Olalde

   d. Jordan Raschke Elton

   e. Greer, Herz & Adams, L.L.P.

   f. Joseph M. Nixon

   g. J. Christian Adams

   h. Maureen Riordan

   i. Public Interest Legal Foundation

3. Trial Counsel for Appellants

   a. Holtzman Vogel Baran Torchinsky & Josefiak PLLC

   b. Dallin B. Holt

   c. Jason B. Torchisky

      d.  Shawn T. Sheehy

4.  "Petteway" Appellees

      a.  Terry Petteway

      b.  Derrick Rose

      c.  Penny Pope

5.  Counsel for "Petteway" Appellees

      a.  Mark P. Gabor

      b.  Valencia Richardson

      c.  Simone Leeper

      d.  Alexandra Copper

      e.  Campaign Legal Center

      f.  Bernadette Samson Reyes

      g.  Sonni Watnin

      h.  UCLA Voting Rights Project

      i.  Chad W. Dunn

      j.  Brazil & Dunn

      k.  Neil G. Baron

      l.  Law Office of Neil G. Barron

6.  "NAACP" Plaintiffs

      a.  Dickinson Bay Area Branch NAACP

      b.  Mainland Branch NAACP

      c.  LULAC Counsel 151

      d.  Edna Courville

     e.  Joe A. Compian

     f.  Leon Phillips

7.  Counsel for NAACP Plaintiffs

     a.  Adrianne M. Spoto

     b.  Hilary Harris Klein

     c.  Southern Coalition for Social Justice

     d.  Andrew Silberstein

     e.  Diana C. Vall-Llobera

     f.  JoAnna Suriani

     g.  Michelle Anne Polizzano

     h.  Molly Linda Zhu

     i.  Richard Mancino

     j.  Willkie Farr & Gallagher

     k.  Hani Mirza

     l.  Joaquin Gonzalez

     m. Sarah Xiyi Chen

     n.  Christina Beeler

     o.  Texas Civil Rights Project

     p.  Kathryn Carr Garrett

     q.  Nickolas Anthony Spencer

     r.  Spencer & Associates PLLC

8.  United States of America

9.  Counsel for United States of America

a. U.S. Department of Justice

b. Robert S. Berman

c. Matthew Drecun

d. Nicolas Riley

e. Catherine Meza

f. Bruce I. Gear

g. K'Shaani Smith

h. Michael E. Stewart

i. T. Christian Herren, Jr.

j. Tharuni A. Jayaraman

k. Zachary Newkirk

l. Daniel David Hu

Appellants certify that, to the best of their knowledge, no publicly traded company or corporation has an interest in the outcome of this case or appeal.

By:    */s/ Joseph Russo, Jr.*
Counsel for Appellants

## <u>RULE 35(b) STATEMENT</u>

This appeal involves a question of exceptional importance that warrants initial en banc hearing: whether the Voting Rights Act (VRA) protects minority coalitions. *See* Fed. R. App. P. 35(b)(1)(B). Appellants present additional important issues in this appeal that they do not abandon by this petition; however, the coalition issue warrants en banc consideration. *See LULAC v. Clements*, 999 F.2d 831, 894 (5th Cir. 1993) ("*Clements*") (Jones, J., concurring).

While this Circuit has so far reviewed coalition claims as presenting as "a question of fact," and permitting the "aggregation of different minority groups where the evidence suggests that they are politically cohesive" (*id*. at 864), other circuit courts have either held the VRA does not protect minority coalitions, or have indicated strong concerns with such holding. *See Hall v. Virginia*, 385 F.3d 421, 431-32 (4th Cir. 2004); *Nixon*, 76 F.3d at 1392-93 (6th Circuit, 1996 opinion); *Frank v. Forest County*, 336 F.3d 570, 575-76 (7th Cir. 2003).

It is now time for the full Court to face the minority coalition theory directly, and hold that—just like influence and crossover districts—minority coalitions are also not contemplated under or protected by the VRA. For these reasons, and as discussed below, Appellants ask that the Court consider this critically important issue en banc, in the first instance, to ensure that the whole Court speaks with one voice on this important issue, and that the matter is fully considered expeditiously.

# **TABLE OF CONTENTS**

Certificate of Interested Persons ................................................................i

Rule 35(b) Statement ...............................................................................v

Table of Authorities ............................................................................. vii

Statement of the Issue Supporting Initial Hearing En Banc .....................1

Statement of the Proceedings and Facts ...................................................2

Argument..................................................................................................4

Conclusion ..............................................................................................12

Certificate of Service .............................................................................14

Certificate of Compliance ......................................................................14

# TABLE OF AUTHORITIES

**Cases**

*Allen v. Milligan*, 599 U.S. 1 (2023)........................................................................5, 6

*Bartlett v. Strickland*, 556 U.S. 1 (2009) ...................................................... 4, 8, 9, 10

*Campos v. City of Baytown*, 840 F.2d 1240 (5th Cir. 1988) ...................................4

*Campos v. City of Baytown*, 849 F.2d 943 (5th Cir. 1988)......................................5

*Citizens of Hardee Cty. v. Hardee Cty. Bd. of Comm'rs*, 906 F2d 524 (11th Cir. 1990) ......................................................................................................................7

*Johnson v De Grandy*, 512 U.S. 997 (1994)............................................................9

*Frank v. Forest County*, 336 F.3d 570 (7th Cir. 2003).................................... v, 6, 7

*Gratz v. Bollinger*, 277 F.3d 803 (6th Cir. 2001) ..................................................12

*Gregory v. Ashcroft*, 501 U.S. 452 (1991)...............................................................5

*Growe v. Emison*, 507 U.S. 25 (1993) .....................................................................4

*Hall v. Virginia*, 385 F.3d 421 (4th Cir. 2004) .............................................. v, 6, 7

*Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114 (10th Cir. 2013) .................12

*Huot v. City of Lowell*, No. CV 17-10895-WGY, 2017 WL 5615573 (D. Mass. Nov. 21, 2017) ......................................................................................................7

*LULAC v. Clements*, 999 F.2d 831 (5th Cir. 1993) ........................................ passim

*Nixon*, 76 F.3d (6th Circuit, 1996 opinion)...................................................... v, 6, 7

*Perry v. Perez*, 565 U.S. 388 (2012)........................................................................4

*Pope v. Cnty of Albany*, 687 F3d 565 (2nd Cir 2012) .............................................7

*U.S. v. Bass*, 404 U.S. 336, 404 U.S.  (1971) ..........................................................5

**Statutes, Rules and Other Authorities**

52 U.S.C. § 10301 ...................................................................................11

FED. R. APP. P. 32(a)(5) ...........................................................................

FED. R. APP. P. 32(a)(6) .......................................................................14

Fed. R. App. P. 35(b)(1)(B) ......................................................................v

FED. R. APP. P. 35(b)(2)(A) .................................................................14

Fed. R. App. P. 35(c) .............................................................................4

## STATEMENT OF THE ISSUE SUPPORTING
## INITIAL HEARING EN BANC

Appellants respectfully request that the Court hear this appeal en banc in the first instance. It is currently set for oral argument before a panel of this Court on November 7, 2023.

The issue of whether a minority coalition is protected under the VRA is one of exceptional importance for the Court's determination, as it affects the future defense and prosecution of vote dilution claims, and impacts what every jurisdiction in the nation must take into account at any time they enact new districting plans. At the time of this Petition, an amicus brief has been filed on this issue by Judicial Watch, Inc., which (in addition to Appellants' Opening Brief), lays out the importance of this issue. *See* Dkt. 63 at 2-3 (discussing coalition districts in connection with other rejected sub-majority districting theories like influence and crossover districts).

Proceeding with a panel first could potentially waste judicial resources. Reasonable judges have reviewed this issue and come to different results. Regardless of how the panel rules, the failing side is likely to petition for rehearing on banc. Appellants believe en banc initial review will be the most efficient way to ensure the Court as a whole addresses and provides a single determination on this issue, following more recent and contrary opinions that have issued.

1

Appellants submit this petition, and ask the Court to grant initial en banc review in this appeal.

## STATEMENT OF THE PROCEEDINGS AND FACTS

Three separate VRA cases were filed in the district court by the Petteway[1] and NAACP[2] groups, and the United States of America ("DOJ") (collectively, "Coalition Claimants" or "Appellees") against Galveston County, Texas, the Galveston County Commissioners Court, Galveston County Judge Mark Henry, and Galveston County Clerk Dwight Sullivan (collectively, the "County" or "Appellants"). They challenge the 2021 redistricting plan that establishes a Texas County's commissioners court precinct boundaries. The cases were consolidated, and after a two-week bench trial, the district court issued a final order along with Findings of Fact and Conclusions of Law on October 13, 2023. ROA.15881. The court entered a mandatory injunction against the County requiring the adoption of a new districting plan with "supporting expert analysis" within seven days, or the district court would implement an illustrative plan introduced by the DOJ at trial. ROA.16038-16039. The court

---

[1] Terry Petteway, Constable Derrick Rose, and the Hon. Penny Pope are the "Petteway Plaintiffs." Sonny James and Michael Montez have been dismissed. ROA.1496; ROA.2979. The Petteway Plaintiffs sued Galveston County, Texas and the Hon. Mark Henry as Galveston County Judge.

[2] The "NAACP Plaintiffs" are Dickinson Bay Area Branch NAACP, Galveston Branch NAACP, Mainland Branch NAACP, Galveston League of United Latin American Citizens Council 151, Edna Courville, Joe A. Compian, and Leon Phillips. They sued Galveston County, Texas, the Hon, Mark Henry as Galveston County Judge, and Dwight D. Sullivan as Galveston County Clerk.

extended its deadlines on October 15, 2023 and held that, if Appellants "fail or prefer not to submit a revised plan, they are ordered to implement" one of two specific plans "by November 8, 2023." ROA.16068. Each of those plans favor a Democratic candidate over a Republican.

The rush, despite the next election occurring in November of 2024, relates to the candidate filing period, which opens on November 11, 2023.  ROA.16035-16036 ¶433. The problem is that the County's adopted plan and either of the district court's referenced plans cover such different areas that, depending on which plan is in effect during the candidate filing period, if that plan is changed before the November 2024 election, the vast majority of its Precinct 3 resident-candidates would be eliminated as candidates in November of 2024. Notably, the incumbent Democrat could still file and run as a candidate regardless of which of the three plans is in effect during the candidate filing period; therefore, practically speaking, the effect will be felt by County Republicans.

The County appealed from the district court's order and sought a temporary administrative stay, and a stay pending appeal. A motions panel of this Court granted a temporary administrative stay. An expedited briefing schedule was set, with oral argument before a panel of this Court on November 7, 2023 before the Honorable Judges Jones, Elrod, and Barksdale. On October 26, 2023, Appellants filed their Opening Brief. Appellants maintain each of the issues and arguments stated therein,

and intend no waiver of any argument by filing this petition. Appellants ask, instead, that the full Court address this appeal due to the importance of the coalition issue, and to promote efficiency.

Appellees' brief is due November 2, 2023. This petition is therefore timely filed. Fed. R. App. P. 35(c).

## **ARGUMENT**

Congress made no reference to minority coalitions in the text of the VRA, and the Supreme Court has never stated that these claims can be sustained under Section 2. *See, e.g.*, *Growe v. Emison*, 507 U.S. 25, 41 (1993)) (declining to rule on the validity of coalition claims); *Bartlett v. Strickland*, 556 U.S. 1, 13-14 (2009) (declining to address "coalition-district claims in which two minority groups form a coalition to elect the candidate of the coalition's choice"); *Perry v. Perez*, 565 U.S. 388, 398-99 (2012) (creating a coalition district is likely not necessary to comply with VRA Section 5). Circuit Courts of Appeal have split on the question.

As Judge Jones has explained, well-established legal analysis precludes acknowledgment of a coalition theory "because the text of the [VRA] does not support it." *Clements*, 999 F.2d at 894 (Jones, J., concurring). As Judge Higginbotham stated in his dissent from the denial of rehearing in *Campos v. City of Baytown*, 840 F.2d 1240 (5th Cir. 1988), the question to be answered is whether "Congress intended to *protect* [] coalitions" rather than whether the VRA prohibits

them. *Campos v. City of Baytown*, 849 F.2d 943, 945 (5th Cir. 1988) (Higginbotham, J. dissenting on denial of rehearing, joined by five other circuit judges) (explaining the notion "that a group composed of [different minorities] is itself a protected minority" "stretch[es] the concept of cohesiveness" beyond its intended bounds to include political alliances, undermining Section 2's effectiveness and amounting to "an unwarranted extension of congressional intent."). That the VRA separately identified language minorities as persons of Spanish Heritage, American Indians, Asian Americans, and Alaskan natives indicates Congress' explicit intent to "consider[] members of each group and the group itself to possess homogenous characteristics" and, "[b]y negative inference," **did not** indicate these groups "might overlap with any of the others" or with Black voters. *See Clements*, 999 F.2d at 894 (Jones, J., concurring).

The VRA also discusses the protection of a "class of citizens" and "a protected class." *Id*. If Congress had meant to expand VRA coverage to "classes" comprised of minority coalitions, it would have done so explicitly. *See id*.; *see also, e.g., Gregory v. Ashcroft*, 501 U.S. 452, 461 (1991) and *U.S. v. Bass*, 404 U.S. 336, 404 U.S. 349 (1971) (in "traditionally sensitive areas" like statutes that affect "the federal balance," courts rely on the statute's clear or plain statements to assure "that the legislature has, in fact, faced, and intended to bring into issue, the critical matters involved in the judicial decision"). And even more recently, as *Allen v. Milligan*

5

observed, reapportionment "is primarily the duty and responsibility of the State[s]," not the federal courts. *Allen v. Milligan*, 599 U.S. 1, 29 (2023) ("*Milligan*"). Section 2 limits judicial action to "instances of **intensive racial politics** where the **excessive role of race** in the electoral process denies minority voters equal opportunity to participate." *Id*. (cleaned up, emphasis added).

In essence, other circuit courts have either held the VRA does not protect minority coalitions, or have indicated strong concerns with such holding. *See Hall v. Virginia*, 385 F.3d 421, 431-32 (4th Cir. 2004); *Nixon*, 76 F.3d at 1392-93 (6th Circuit, 1996 opinion); *Frank v. Forest County*, 336 F.3d 570, 575-76 (7th Cir. 2003). Sister circuits also address a lack of Congressional support or Supreme Court authority permitting coalition claims. *See Hall*, 385 F.3d at 431 (Fourth Circuit holding the VRA does not permit coalition claims); *Frank*, 336 F.3d at 575-76 (Seventh Circuit, same); *Nixon*, 76 F.3d 1381 (Sixth Circuit, same).

The *Nixon* court relied on the "clear, unambiguous language" of Section 2 and the legislative record concluding that minority coalitions were not contemplated by Congress. *Nixon v. Kent County*, 76 F.3d 1381, 1386 (6th Cir. 1996). Just as Judge Jones stated in her *Clements* concurrence, had Congress intended to extend protection to coalition groups, it would have invoked protected "classes of citizens" instead of a (singular) protected "class of citizens." *Id.* at 1386-87. Because Section 2 "reveals no word or phrase which reasonably supports combining separately

protected minorities," the Sixth Circuit concluded that coalition claims are not cognizable. *Id.* at 1387. It disagreed with *Campos* as an "**incomplete** [and] incorrect analysis." *Id.* at 1388, 1390-92 (emphasis added) (noting the difficulties of drawing district lines for minority coalitions, and that permitting coalition claims would effectively eliminate the first *Gingles* precondition).

As the Fourth Circuit explained in *Hall*, permitting multiracial coalitions to bring VRA claims would transform the statute from a source of minority protection to an advantage for *political* coalitions, and a redistricting plan that prevents political coalitions among racial or ethnic groups "does not result in vote dilution 'on account of race' in violation of Section 2." *Hall*, 385 F.3d at 431. In *Frank*, which involved an Indian tribe's vote dilution claim brought with Black voters challenging a single-member municipal voting district, the Seventh Circuit acknowledged the circuit split, observed the "problematic character" of coalition claims, but avoided ruling on the issue and, instead, rejected the claim based on a lack of evidence that the two groups had a mutual interest in county governance. *See Frank*, 336 F.3d at 575.[3]

---

[3] The Second and Eleventh Circuits accept coalition claims. *See Pope v. Cnty of Albany*, 687 F3d 565 (2nd Cir 2012) (allowing the claims after briefly acknowledging the Circuit split and stating that the Supreme Court has not ruled on this issue); *Citizens of Hardee Cty. v. Hardee Cty. Bd. of Comm'rs*, 906 F2d 524, 526 (11th Cir. 1990) (permitting coalition claims if political cohesion is established). But even as Judge Keith's dissent recounts in *Nixon*, the VRA "does not indicate whether a coalition of African Americans and Hispanic-Americans may constitute a *single* 'class of citizens'" under the VRA. *Nixon*, 76 F.3d at 1394 (Keith, J., dissenting). At least one district court within the First Circuit has held that the First Circuit would allow minority coalition claims. *See Huot v. City of Lowell*, No. CV 17-10895-WGY, 2017 WL 5615573 (D. Mass. Nov. 21, 2017).

Though the United States Supreme Court has not expressly stated that coalition claims are not protected under the VRA, it has cited the Fourth Circuit's *Hall* opinion favorably. *Bartlett*, 556 U.S. at 14-15 (stating a coalition "VRA claim would give minority voters 'a right to preserve their strength for the purposes of forging an advantageous political alliance'"). *Bartlett* involved crossover districts, where minority voters make up less than a majority but whom "minority voters might be able to persuade . . . to cross over and join with them" (arguably an "effective minority district"). *Id*. at 14.[4] The Court ruled that crossover districts contradict the VRA's mandate, because the VRA requires proof that minorities "have less opportunity than other members of the electorate to . . . elect representatives of their choice." *Id*. (quotation omitted). Where a minority group forms less than a majority, it "standing alone ha[s] no better or worse opportunity to elect a candidate than does any other group of voters with the same relative voting strength." *Id*.

This case presents the perfect example, as the district court found and all parties agree, neither Black nor Hispanic voters in Galveston County can, on their own, form a majority-minority single-member precinct. ROA.15912 ¶74.[5]

---

[4] *Bartlett* resulted in a 5-4 judgment, with the Court's opinion written by Justice Kennedy (joined by Chief Justice Roberts and Justice Alito), a concurring opinion from Justice Thomas (joined by Justice Scalia), and Justices Breyer, Ginsburg, Stevens, and Souter, dissenting.

[5] Another Texas case pending in the Western District (and which has had several appeals to this Court already) also involves a coalition claim, though no trial date is currently set in that case. *See*

Clearly, *Bartlett* rejects the argument that minority groups have special protection under the VRA to form *political* coalitions. *Id*. at 15 ("[M]inority voters are not immune from the obligation to pull, haul, and trade to find common political ground") (quoting ) *Johnson v. De Grandy*, 512 U.S. 997, 1020 (1994)). *Bartlett* indicates the Court would prohibit coalition claims, as it explained that "African-Americans . . . have the opportunity to join other voters - *including other racial minorities*, or whites or both - to reach a majority and elect their preferred candidate." *Id*. at 14 (emphasis added). Coalition claims, at their core, present political alliances to advance whatever concerns the compound group may advance at a particular moment in time, for a particular election. Their continued existence is a question of speculation depending on the issues, the times, their locations, local budgetary concerns, and a plethora of other factors.

The VRA cannot "place courts in the untenable position of predicting many political variables and tying them to race-based assumptions." *Id*. at 17 (stating courts "would be directed to make predictions or adopt premises that even experienced polling analysts and political experts could not assess with certainty, particularly over the long term"). But those were the questions asked in this case, including:

---

*LULAC v. Abbott*, No. 3:21-cv-259 (consol. with nos. 1:21-cv-965, 1:21-cv-988, 1:21-cv-1006, 1:21-cv-1038, 3:21-cv-299), pending before the U.S. District Court for the Western District of Texas, El Paso Division (three-judge panel).

- How have Hispanic Galveston County voters turned out to support the same candidate as Black Galveston County voters in the past?

- How reliable a prediction could be determined for future elections?

- Do Hispanic and Black voters share candidates of choice in nonpartisan or primary elections?

- What candidates have Black and Latino voters supported together, and will those trends continue?

- Were past voting trends based on incumbency, and did that depend on race?

- What are the turnout rates among white and minority voters, and will that continue into the future?

*See id.* at 17-18. These questions invite speculation, and impermissibly force courts, ill equipped, into the decisionmaking based on political judgments. *Id.* (cautioning that courts "must be most cautious before" requiring "courts to make inquiries based on racial classifications and race-based predictions"). To permit the type of crossover district urged in *Bartlett* "raise[d] serious constitutional questions." *Id.*

The VRA's 1982 amendments show "Congress clearly walked a fine line" in its work to "codify the results test for vote dilution claims while expressly prohibiting proportional representation for minority groups." *Clements*, 999 F.2d at 896 (Jones, J. concurring). A results-based VRA claim will therefore sometimes fail because a minority will lack sufficient population to create a majority single-member district. *Id.* However, "opportunistic minority coalitions" can circumvent this numerosity requirement to seek court-mandated proportional representation, a

remedy expressly prohibited under the VRA that is also "possibly unconstitutional." *Id*.

Ultimately, this case is about politics. And, following trial, the district court would implement a map that favors a Democrat over a Republican candidate. Appellees' contention that race and politics are inextricably intertwined (*see* ROA.15935) does not help their VRA claim—it only solidifies the fact that they do seek a political outcome, and not to cure any action performed "on account of race." 52 U.S.C. § 10301.

While coalition claims surely satisfy a *political* outcome (an example of which is perfectly presented here), that outcome necessarily places the concerns of a single minority group behind the larger political concerns of the coalition. The interests of a coalesced minority group are no longer the immediate or single focus in a coalition claim—the combined interests of the coalition are. Horse trading may occur, just as it might within a political party. Non-Hispanic Black voters may freely agree that language assistance in education is an important issue to Hispanic voters, even though Black voters and their communities do not need such assistance. But allocating funding priority to specific programs can easily divide coalition members who do not share the same concerns. A candidate of choice for members of a coalition, therefore, may differ from the candidate of choice of the coalition's various parts.

Other cases have warranted initial en banc hearing, both on petition and sua sponte. *See, e.g., Int'l Refugee Assistance Project v. Trump*, No. 17-1351 (4th Cir. April 10, 2017) (sua sponte ordering initial hearing en banc in challenge to executive order); *West Virginia v. EPA*, No. 15-1363 (D.C. Cir. May 1, 2016) (sua sponte ordering initial hearing en banc in challenge to presidential Clean Power Plan); *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1125 (10th Cir. 2013) (initial hearing en banc, on petition, of challenge to contraceptive-coverage requirement under Affordable Care Act); *Gratz v. Bollinger*, 277 F.3d 803 (6th Cir. 2001) (granting petition for initial hearing en banc in affirmative action challenge). Appellants ask that the Court order en banc hearing in the first part here, as well.

## CONCLUSION

The coalition issue presents a question of national importance about the future implementation of vote dilution claims under the VRA, and what every jurisdiction in the nation must take into account whenever enacting districting plans. It is an area of law that is evolving around the nation. To aid judicial efficiency, promote consistency and aid the parties, avoid likely requests for en banc rehearing following a panel decision, and permit the Court to speak authoritatively in one voice on this very important legal issue, Appellants ask that the Court hear this important issue en banc in the first instance. Should en banc hearing be granted, Appellants respectfully request the case be set for argument at the earliest possible setting.

Respectfully Submitted,

PUBLIC INTEREST LEGAL
FOUNDATION

GREER, HERZ & ADAMS, L.L.P.

By: /s/ *Joseph Russo*

Joseph M. Nixon
Federal Bar No. 1319
Tex. Bar No. 15244800
J. Christian Adams*
South Carolina Bar No. 7136
Virginia Bar No. 42543
Maureen Riordan*
New York Bar No. 2058840
107 S. West St., Ste. 700
Alexandria, VA 22314
jnixon@publicinterestlegal.org
jadams@publicinterestlegal.org
mriordan@publicinterestlegal.org
713-550-7535 (phone)
888-815-5641 (facsimile)

Joseph Russo (Lead Counsel)
Fed. ID No. 22559
State Bar No. 24002879
jrusso@greerherz.com
Jordan Raschke
Fed. ID No.3712672
State Bar No. 24108764
jraschke@greerherz.com
1 Moody Plaza, 18th Floor
Galveston, TX 77550-7947
(409) 797-3200 (Telephone)
(866) 422-4406 (Facsimile)

Angie Olalde
Fed. ID No. 690133
State Bar No. 24049015
2525 S. Shore Blvd. Ste. 203
League City, Texas 77573
aolalde@greerherz.com
(409) 797-3262 (Telephone)
(866) 422-4406 (Facsimile)

*Counsel for Defendants*

*seeking admission before this Court

13

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

1.    This document complies with the word limit of FED. R. APP. P. 35(b)(2)(A) because this document contains **3,225** words which is within the 3,900 word-count limit, excluding the portions exempted by Rule 32(f) and Fifth Circuit Rule 32.2.

2.    This document complies with the typeface and type styles requirements of FED. R. APP. P. 32(a)(5) and 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in Times New Roman 14-point font.

Dated: November 2, 2023

*/s/ Joseph Russo, Jr.*
Counsel for Appellants

## CERTIFICATE OF CONFERENCE

I certify that counsel for Appellees were contacted about the substance of this petition, and that Appellees are OPPOSED to this petition.

*/s/ Joseph Russo, Jr.*
Counsel for Appellants

## CERTIFICATE OF SERVICE

I certify that, on November 2, 2023, this document and its attachments were electronically served on all counsel of record in this case in accordance with the Federal Rules of Appellate Procedure.

*/s/ Joseph Russo, Jr.*
Counsel for Appellants

No. 23-40582

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

Honorable Terry Petteway; Honorable Derrick Rose; Honorable
Penny Pope,

*Plaintiffs–Appellees*

v.

Galveston County, Texas; Mark Henry, *in his official capacity as
Galveston County Judge*; Dwight D. Sullivan, *in his official capacity
as Galveston County Clerk*,

*Defendants–Appellants*

---

United States of America,

*Plaintiff–Appellee*

v.

Galveston County, Texas; Galveston County Commissioners Court;
Mark Henry, *in his official capacity as Galveston County Judge,*

*Defendants–Appellants*

---

Dickinson Bay Area Branch NAACP; Galveston Branch NAACP;
Mainland Branch NAACP; Galveston LULAC Council 151; Edna
Courville; Joe A. Compian; Leon Phillips,

*Plaintiffs–Appellees*

---

On appeal from the United States District Court
for the Southern District of Texas
USDC Nos. 3:22-CV-00057, 3:22-CV-00093, 3:22-CV-00117

---

**EXHIBITS TO APPELLANTS' PETITION FOR
<u>EN BANC HEARING</u>**

Exhibit A     October 13, 2023 Order

Exhibit B     October 15, 2023 Order

# EXHIBIT A
# OCTOBER 13, 2023 ORDER

United States District Court
Southern District of Texas
**ENTERED**
October 13, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| TERRY PETTEWAY, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | 3:22-CV-57 |
| | § | |
| GALVESTON COUNTY, TEXAS, | § | |
| *et al.*, | § | |
| | § | |
| Defendants. | § | |

## <u>ORDER</u>

In its findings of fact and conclusions of law issued today, the court held that the 2021 commissioners-court precinct map adopted by the Galveston County Commissioners Court on November 12, 2021, violates § 2 of the Voting Rights Act. Dkt. 250. The enacted map denies Black and Latino voters the equal opportunity to participate in the political process and the opportunity to elect a representative of their choice to the commissioners court. Accordingly, the court permanently enjoins the defendants from administering, enforcing, preparing for, or in any way permitting the nomination or election of county commissioners from the commissioners-court precinct map as currently configured. The plaintiffs are the prevailing parties and judgment is hereby entered in their favor.

23-40582.16038

Having failed to comply with § 2 of the Voting Rights Act, the commissioners court must adopt another plan in time for the 2024 election, which means before November 11, 2023—the statutory opening date for candidate filing. So the court orders the following remedial proceedings:

1. By **October 20, 2023**, the defendants shall file with the court a revised redistricting plan with sufficient supporting expert analysis establishing that it complies with § 2 of the Voting Rights Act. Along with these materials, the defendants may include a memorandum of law of no more than 10 pages.

2. By **October 27, 2023**, the plaintiffs may file objections to the defendants' revised plan and, if desired, proposed alternative plans with supporting expert analysis. The plaintiffs' *consolidated* objections shall be no more than 10 pages.

3. The court will conduct an in-person remedial hearing on **November 1, 2023, at 2 p.m.** to decide which redistricting plan will be ordered into effect.

4. If the defendants fail or prefer not to submit a revised plan, they are ordered to implement the illustrative plan presented by Anthony Fairfax on August 10, 2023 (PX-339), on or before **November 1, 2023**, and use that plan for all future elections until the commissioners court adopts a different plan.

The court refrains from deciding attorneys' fees until the plaintiffs seek such relief under Fed. R. Civ. P. 54(d).

Signed on Galveston Island this 13th day of October, 2023.

JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE

23-40582.16039

# EXHIBIT B
# OCTOBER 15, 2023 ORDER

United States District Court
Southern District of Texas
**ENTERED**
October 15, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| TERRY PETTEWAY, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | 3:22-CV-57 |
| | § | |
| GALVESTON COUNTY, TEXAS, | § | |
| *et al.*, | § | |
| | § | |
| Defendants. | § | |

## <u>ORDER</u>

Before the court is the defendants' emergency motion to stay injunction pending appeal. Dkt. 254.

A district court considers four factors in deciding motions to stay pending appeal:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested . . . ; and (4) where the public interest lies.

*SEC v. Barton*, 79 F.4th 573, 581 (5th Cir. 2023) (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)). Because the defendants have established none of these factors, the court denies their motion.

The defendants also contend that the seven-day deadline the court has imposed for submitting a revised map is "too short," and the "more

23-40582.16066

reasonable option is to allow the enacted plan to remain in force pending the outcome of [the] appeal." Dkt. 254 at 6. But the court's deadline is entirely appropriate, especially considering that the defendants required Thomas Bryan to draw both Map 1 and Map 2, the enacted plan adopted during the 2021 redistricting cycle, in just eight days. *See* Dkt. 231 at 111–13, 225. Their contention that the court's deadline is too short lacks credibility.

Further, the defendants argue that if a plan is "found to be unlawful very close to the election date, the only reasonable option may be to use the plan one last time." Dkt. 254 at 6 (quoting *Abbott v. Perez*, 138 S. Ct. 2305, 2324 (2018)). But the court is not persuaded. While the candidate-filing period opens in just three weeks, the 2024 primary election is still several months away, and the general election will not occur for another year. The court maintains the position it took in its findings and conclusions: the defendants must adopt a new plan before the 2024 election. Dkt. 250 ¶¶ 431–435.

That said, the court will adjust its remedial schedule to provide additional time. The defendants will have seven more days—until **October 27, 2023**—to file a redistricting plan and supporting expert analysis. The plaintiffs may file objections and, if desired, proposed alternative plans by **November 3, 2023**. The court reschedules its in-person remedial hearing

23-40582.16067

to **November 8, 2023, at 3:00 p.m.** If the defendants fail or prefer not to submit a revised plan, they are ordered to implement the Fairfax illustrative plan or Map 1, *see infra*, by **November 8, 2023**. The court will not allow further extensions to its remedial schedule.

Finally, the defendants argue that requiring them to potentially adopt the Fairfax plan is improper because "Commissioner Apffel's house is not within Fairfax's proposed Precinct 1, which would prevent Apffel from running for re-election." Dkt. 254 at 2–3. The defendants can avoid this by filing a proposed plan by October 27 that ensures that the current commissioners reside in their new precincts. That said, the court did not intend to choose a map that draws incumbents out of their precincts. Accordingly, to alleviate the court's oversight, the defendants may adopt Map 1—as considered during the commissioners court's special meeting on November 12, 2021—instead of the Fairfax map should they fail or prefer not to submit a revised plan. Otherwise, the court will address these concerns at the November 8 hearing.

\*       \*       \*

The defendants' emergency motion to stay injunction pending appeal is denied. Dkt. 254. The remedial proceedings outlined in the court's order of October 13, 2023, are amended as described above.

23-40582.16068

Signed on Galveston Island this 15th day of October, 2023.

_____

JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE

23-40582.16069