No. 23-40582

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

Galveston County, Texas, the Galveston County Commissioners
Court, Galveston County Judge Mark Henry, and Galveston County
Clerk Dwight Sullivan,

*Appellants*

v.

Terry Petteway, Constable Derrick Rose, the Hon. Penny Pope,
Mainland Branch NAACP, Dickinson Bay Area Branch NAACP,
Galveston Branch NAACP, and Galveston LULAC Council 151, and
the United States of America,

*Appellees*

---

On appeal from the United States District Court
for the Southern District of Texas, Galveston Division
No. 3:22-CV-00057 (consolidated with Nos. 3:22-CV-00093 and 3:22-CV-00117)

---

## APPELLANTS' RENEWED EMERGENCY
## MOTION TO STAY PENDING APPEAL

Joseph Russo, Jr. (Lead Counsel)
Jordan Raschke Elton
Greer, Herz & Adams LLP
1 Moody Plaza, 18th Fl.
Galveston, Texas 77550
(409) 797-3200 (Phone)

Angie Olalde
Greer, Herz & Adams, LLP
2525 South Shore Blvd., Ste. 203
League City, Texas 77573
(409)797-3262 (Phone)

Joseph M. Nixon
J. Christian Adams
Maureen Riordan
Public Interest Legal Foundation
107 S. West St., Ste. 700
Alexandria, VA 22314
713-550-7535 (phone)

## **CERTIFICATE OF INTERESTED PERSONS**

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1. Appellants

    a. Galveston County, Texas,

    b. the Galveston County Commissioners Court

    c. Galveston County Judge Mark Henry

    d. Galveston County Clerk Dwight Sullivan

2. Trial and Appellate Counsel for Appellants

    a. Joseph Russo, Jr.

    b. Andrew Mytelka

    c. Angela Olalde

    d. Jordan Raschke Elton

    e. Greer, Herz & Adams, L.L.P.

    f. Joseph M. Nixon

    g. J. Christian Adams

    h. Maureen Riordan

    i. Public Interest Legal Foundation

3. Trial Counsel for Appellants

    a. Holtzman Vogel Baran Torchinsky & Josefiak PLLC

    b. Dallin B. Holt

    c. Jason B. Torchisky

        d.  Shawn T. Sheehy

4.  "Petteway" Appellees

        a.  Terry Petteway

        b.  Derrick Rose

        c.  Penny Pope

5.  Counsel for "Petteway" Appellees

        a.  Mark P. Gabor

        b.  Valencia Richardson

        c.  Simone Leeper

        d.  Alexandra Copper

        e.  Campaign Legal Center

        f.  Bernadette Samson Reyes

        g.  Sonni Watnin

        h.  UCLA Voting Rights Project

        i.  Chad W. Dunn

        j.  Brazil & Dunn

        k.  Neil G. Baron

        l.  Law Office of Neil G. Barron

6.  "NAACP" Plaintiffs

        a.  Dickinson Bay Area Branch NAACP

        b.  Mainland Branch NAACP

        c.  LULAC Counsel 151

        d.  Edna Courville

e.  Joe A. Compian

f.  Leon Phillips

7.  Counsel for NAACP Plaintiffs

    a.  Adrianne M. Spoto

    b.  Hilary Harris Klein

    c.  Southern Coalition for Social Justice

    d.  Andrew Silberstein

    e.  Diana C. Vall-Llobera

    f.  JoAnna Suriani

    g.  Michelle Anne Polizzano

    h.  Molly Linda Zhu

    i.  Richard Mancino

    j.  Willkie Farr & Gallagher

    k.  Hani Mirza

    l.  Joaquin Gonzalez

    m. Sarah Xiyi Chen

    n.  Christina Beeler

    o.  Texas Civil Rights Project

    p.  Kathryn Carr Garrett

    q.  Nickolas Anthony Spencer

    r.  Spencer & Associates PLLC

8.  United States of America

9.  Counsel for United States of America

a.  U.S. Department of Justice

b.  Robert S. Berman

c.  Catherine Meza

d.  Bruce I. Gear

e.  K'Shaani Smith

f.  Michael E. Stewart

g.  T. Christian Herren, Jr.

h.  Tharuni A. Jayaraman

i.  Zachary Newkirk

j.  Daniel David Hu

Appellants certify that, to the best of their knowledge, no publicly traded company or corporation has an interest in the outcome of this case or appeal.

By:    */s/ Joseph Russo, Jr.*
Counsel for Appellants

## APPELLANTS' RENEWED
## <u>EMERGENCY MOTION TO STAY PENDING APPEAL</u>

Pursuant to Federal Rule of Appellate Procedure 8, Appellants Galveston County, Texas, the Galveston County Commissioners Court, Galveston County Judge Mark Henry, and Galveston County Clerk Dwight Sullivan (collectively, the "County" or "Appellants") file this renewed emergency request to stay the district court's final judgment pending the outcome of this appeal, which is set for en banc review.

Yesterday evening (November 30, 2023), the district court entered the attached order implementing Map 1 and setting a status conference for Monday, December 4, 2023 at 1:00 p.m. "to discuss how the matter will proceed to ensure that the 2024 election will be conducted using Map 1." Exhibit 1.

Due to this latest development, Appellants ask that an **<u>emergency stay issue today, December 1, 2023</u>**.

The candidate filing period has been open since November 11, 2023 under the 2021 Galveston County Commissioners' Court districting plan ("2021 Plan"). Under the district court's latest order, candidates who have filed and qualified will no longer be able to run for County Commissioner.

**<u>Appellants believe action is needed today, December 1, 2023</u>.**

Appellees have reiterated their opposition to a stay, as recently as this morning, in response to Appellants' letter filed in this Court yesterday.

**INTRODUCTION AND NATURE OF THE EMERGENCY**

This is an appeal of a Voting Rights Act ("VRA") case brought by a minority coalition of Black and Latino voters challenging the 2021 Plan.

On November 30, 2023, the district court entered an order implementing Map 1, a map that was not adopted by the Galveston County Commissioners Court. The district court stated it was "no longer practicable" to allow the Commissioners Court any opportunity to consider or adopt an alternate map (Exhibit 1 at 2) and, without awaiting a response from Appellants, and following the misstatement from Petteway Appellees that there was no stay request pending before this Court, entered its order at 6:30 p.m., only 3.5 hours after the Petteway Appellees' request was filed.

It is not disputed that the federal district court's imposition of Map 1 will favor a Democratic candidate for County Commissioner Precinct 3 over a Republican, or that it greatly alters the boundaries of the 2021 Plan—**which has been in place for over two years now**.

Considering the Court's grant of en banc review, and the original panel's strong denouncement of prior case law allowing minority coalition claims to proceed under the VRA, Appellants ask that the Court enter an order staying enforcement of the district court's final judgment and any further order from the district court (including its November 30, 2023 Order) that prevents the use of the 2021 Plan for the 2024 election. As Appellants argued in response to the Petteway Appellees'

motion to vacate this Court's temporary administrative stay, submitted to Justice Alito, the VRA is too important to be misused for political gain—which is precisely what a coalition claim does by joining plaintiffs under a political ideology, not by racial ties. And as *Allen v. Milligan* has recently instructed, reapportionment "is primarily the duty and responsibility of the State[s]," not the federal courts. *Allen v. Milligan*, 599 U.S. 1, 29 (2023). Section 2 limits judicial action to "instances of intensive racial politics where the excessive role of race in the electoral process denies minority voters equal opportunity to participate." *Id*. (cleaned up). Appellants therefore renew their request for a stay pending appeal, and present this renewed request as an emergency to this Court.

## BRIEF FACTUAL BACKGROUND

The Court is likely familiar with the facts of this case, due to the parties'
numerous filings thus far. Briefly, the Galveston County Commissioners Court
considered two map proposals following the 2020 Census (Map 1 and Map 2), and
adopted the "Map 2" proposal (2021 Plan):

**The "Map 1" Proposal**



**The "Map 2" Proposal (2021 Plan)**

ROA.24458-24459.

Both proposed plans kept all Commissioners within their precinct boundaries as required by the Texas Constitution (art. 16 §14) and equalized County population among the precincts. Under the 2021 Plan, the incumbent Democrat for Precinct 3 is less likely to be reelected, considering the political makeup of the County and of the new Precinct 3. *See* ROA.15935, 15937, 16008-16009 ¶¶144, 149, 370. But Map 1 favors a Democratic candidate over a Republican.

**ARGUMENT**

## I.  Standard of Review and Applicable Law

A stay is an extraordinary remedy founded in equity and committed to the Court's discretion. *Nken v. Holder*, 556 U.S. 418, 437 (2009). In deciding whether a stay should be granted during an appeal, courts consider the following factors:

1.  whether there is a strong showing the appellants are likely to succeed on the merits;

2.  whether appellants will be irreparably injured absent a stay;

3.  whether a stay will substantially injure the other parties interested in the proceeding; and

4.  where the public interest lies.

*Id.* at 426. These factors cannot be applied rigidly or mechanically. *Campaign for S. Equal. v. Bryant*, 773 F.3d 55, 57 (5th Cir. 2014). And "[t]he first two factors are usually the most important." *Thomas v. Bryant*, 919 F.3d 298, 303 (5th Cir. 2019) (citing *Nken*, 556 U.S. at 434).

**II. The Court's recent grant of en banc review acknowledges that serious questions of law are presented in this appeal, for which Appellants believe they present a substantial case on the merits.**

The Fifth Circuit has held that a request for stay need only be supported by "a **substantial** case on the merits when a serious legal question is involved and show that the balance of equities weighs heavily in favor of granting the stay." *U.S. v. Baylor Univ. Med. Cntr.*, 711 F.2d 38, 39 (5th Cir. 1983) (emphasis added, citing *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. 1981)). This case presents a serious legal question, "both to the litigants involved and the public at large." *See Campaign for S. Equal.*, 773 F.3d at 57 (granting stay where substantial question was presented to Court for resolution on appeal involving same-sex marriage bans). That question is whether a minority coalition can raise a VRA challenge. As discussed below in the irreparable harm section, the balance of equities weighs heavily in favor of granting a stay.

Appellants can also make a strong showing they are likely to succeed on the merits, as discussed in more detail below. With an election "many months away," such likelihood "may counsel in favor of a stay." *Robinson v. Ardoin*, 37 F.4th 208, 228-29 (5th Cir. 2022). Additionally, while the district court criticized the procedure surrounding the adoption of the 2021 Plan, including the lack of a formally adopted timeline, redistricting criteria, competitive procurement for redistricting vendors, and inadequate public notice and comment (*see* ROA.15963-15977 ¶¶232-78), it at

the same time now orders the County to implement Map 1. This fails to account for the fact that Map 1 was drawn and considered under the same procedure the district court criticized with the 2021 Plan.

### A. The VRA does not protect minority coalitions.

This case presents a question of national importance: whether a coalition of Black and Hispanic voters may bring a VRA claim together, when it is undisputed that neither Black nor Hispanic voters could, on their own, form a majority-minority precinct.[1]

This Court has allowed minority coalition claims under the VRA.[2] But since that time, other circuit courts and the United States Supreme Court have held the VRA does not protect sub-majority claims under the VRA. *See Bartlett v. Strickland*, 556 U.S. 1, 14 (2009) (rejecting sub-majority VRA claim for crossover district); *Hall v. Virginia*, 385 F.3d 421, 431-32 (4th Cir. 2004) (same, also using language referencing coalition claims); *Nixon v. Kent County*, 76 F.3d 1381, 1392-93 (6th Cir. 1996) (specifically rejecting coalition claims under the VRA); *Frank v. Forest*

---

[1] In many voting rights cases, the division in question is a "district." Texas counties are divided into "precincts."

[2] *See League of Un. Latin Am. Citizens, Council No. 4434 v. Clements*, 999 F.2d 831, 864 (5th Cir. 1993) (en banc) ("*Clements*"); *Brewer v. Ham*, 876 F.2d 448, 453 (5th Cir. 1989); *Overton v. City of Austin*, 871 F.2d 529, 540 (5th Cir. 1989); *Campos v. City of Baytown*, 840 F.2d 1240, 1244 (5th Cir. 1988); *LULAC Council No. 4386 v. Midland Indep. Sch. Dist.*, 812 F.2d 1494, 1499 (5th Cir. 1987).

*County*, 336 F.3d 570, 575-76 (7th Cir. 2003) (acknowledging circuit split and observing the "problematic character" of coalition claims).

As the Fourth Circuit explained in *Hall*, permitting multiracial coalitions to bring VRA claims would transform the statute from a source of minority protection to an advantage for *political* coalitions, and a redistricting plan that prevents political coalitions among racial or ethnic groups "does not result in vote dilution 'on account of race' in violation of Section 2." *Hall*, 385 F.3d at 431.

Though the United States Supreme Court has not yet ruled directly on this issue,[3] it has indicated that sub-majority claims are not actionable under the VRA, and it has cited *Hall* favorably. In *Bartlett v. Strickland*, the Court held that crossover districts (where minority voters make up less than a majority but are aided by majority voters who cross over to vote for the minority group's preferred candidate—arguably an "effective minority district[]"—contradict the VRA's mandate. *See Bartlett*, 556 U.S. at 14 (discussing crossover district where "minority voters might be able to persuade some members of the majority to cross over and join with them"). That is because the VRA requires proof that minorities "have less opportunity than other members of the electorate to . . . elect representatives of their

---

[3] *See, e.g.*, *Growe v. Emison*, 507 U.S. 25, 41 (1993) (declining to rule on the validity of coalition claims writ large); *Bartlett*, 556 U.S. at 13-14 (declining to address "coalition-district claims in which two minority groups form a coalition to elect the candidate of the coalition's choice"); *Perry v. Perez*, 565 U.S. 388, 398-99 (2012) (creating a coalition district is likely not necessary to comply with VRA Section 5).

choice." *Id*. (quotation omitted). Where a minority group forms less than a majority, it "standing alone ha[s] no better or worse opportunity to elect a candidate than does any other group of voters with the same relative voting strength." *Id*. The Court explained that a minority group could "join other voters—including other racial minorities, or whites, or both—to reach a majority and elect their preferred candidate." *Id*. Where one minority group cannot elect a candidate on its own "without assistance from others," the Court quoted *Hall* favorably, stating that such a "VRA claim would give minority voters 'a right to preserve their strength for the purposes of forging an advantageous political alliance.'" *Id*. at 14-15 (quoting *Hall*, 385 F.3d at 431 and *Voinovich*, 507 U.S. at 154 (minorities in crossover districts "could not dictate electoral outcomes independently")).

Clearly, *Bartlett* rejects the argument that sub-majority groups have special protection under the VRA to form *political* coalitions. *Id*. at 15 ("[M]inority voters are not immune from the obligation to pull, haul, and trade to find common political ground") (quotation omitted). Therefore, even though a VRA analysis should not be mechanically applied, it "does not impose on those who draw election districts a duty to give minority voters the most potential, or the best potential, to elect a candidate by attracting crossover voters." *Id*.

That is, the VRA cannot "place courts in the untenable position of predicting many political variables and tying them to race-based assumptions." *Id*. at 17 (stating

courts "would be directed to make predictions or adopt premises that even experienced polling analysts and political experts could not assess with certainty, particularly over the long term"). That is precisely what Appellees asked of the district court in this case:

- How have Hispanic Galveston County voters turned out to support the same candidate as Black Galveston County voters in the past?

- How reliable a prediction could be determined for future elections?

- What candidates have Black and Latino voters supported together, and will those trends continue?

- Were past voting trends based on incumbency, and did that depend on race?

- What are the turnout rates among white and minority voters, and will that continue into the future?

*See id.* at 17-18. These questions invite speculation, and impermissibly force courts, ill equipped, into the decision making based on political judgments. *Id*. (cautioning that courts "must be most cautious before" requiring "courts to make inquiries based on racial classifications and race-based predictions"). To permit the type of crossover district urged in *Bartlett* "raise[d] serious constitutional questions." *Id*.

The same problems with a crossover district are present with a coalition minority district, and more. There is no line as to how many minority groups could join to form a VRA claim—beyond a Black and Hispanic coalition, plaintiffs could raise any combination or number of minority voter groups. Such claims would almost certainly constitute *political*, rather than minority, coalitions.

Additionally, and importantly given the ramifications present, Congress made no reference to minority coalitions in the text of the VRA. As Judge Higginbotham stated in his dissent from the denial of rehearing in *Campos*, the question to be answered is whether "Congress intended to *protect* [] coalitions" rather than whether the VRA prohibits them. *Campos v. City of Baytown, Tex.*, 849 F.2d 943, 945 (5th Cir. 1988) (per curiam) (Higginbotham, J. dissenting on denial of rehearing, joined by five other circuit judges). No such Congressional intent can be deduced. *Id.* Furthermore, the notion "that a group composed of [different minorities] is itself a protected minority" "stretch[es] the concept of cohesiveness" beyond its natural bounds to include political alliances, undermining Section 2's effectiveness. *See id*.

Had Congress intended to extend protection to coalition groups, it would have invoked protected "classes of citizens" instead of a (singular) protected "class of citizens" identified under the VRA. *Nixon*, 76 F.3d at 1386-87. Because Section 2 "reveals no word or phrase which reasonably supports combining separately protected minorities," the Sixth Circuit concluded that coalition claims are not cognizable. *Id.* at 1387. It expressly disagreed with *Campos* as an "incomplete [and] incorrect analysis." *Id.* at 1388, 1390-92 (noting the difficulties of drawing district lines for minority coalitions, and that permitting coalition claims would effectively eliminate the first *Gingles* precondition).

The question is ripe for Supreme Court review. Under the rationale in *Bartlett* and in other circuit court opinions, the VRA does not protect minority coalitions.

### III.    Defendants will be irreparably injured absent a stay.

Irreparable harm is established upon showing "the inability to enforce [] duly enacted plans." *Abbott v. Perez*, 138 S. Ct. 2305, 2324 n.17 (2018) (explaining, in the context of interlocutory jurisdiction, that where state was barred from conducting elections under an enacted statute, unless the statute is unconstitutional, such an order "would seriously and irreparably harm" the state). As in *Thomas v. Bryant*, another VRA case, irreparable harm exists where state government officials face a trial court order "preventing enforcement of a state law, including the drawing of legislative lines, and where there was a "meaningful possibility (but not certainty) that a full appeal cannot be decided in time to provide Defendants relief before" the election at issue. *Id*. (citing *Abbott*, 138 S.Ct. at 2324 n.17). This voting rights case, as discussed above, presents serious questions about a County's ability to enforce its duly enacted plan. As Justice Kavanaugh stated in his concurring opinion in *Merrill*, **"[l]ate judicial tinkering with election laws can lead to disruption and to unanticipated and unfair consequences for candidates, political parties, and voters, among others."** *See e.g., Merrill v. Milligan*, 142 S. Ct. 879, 880-81 (2022) (Kavanaugh, J. concurring) (emphasis added).

That harm alone is sufficient to show irreparable injury absent a stay, though as discussed herein, additional serious harm may occur if no stay is ordered, including the possibility of the County having no qualified (or eligible) Republican candidates for two of its Commissioners Court seats.

As discussed above, Article 16, Section 14 of the Texas Constitution requires candidates for the Commissioners Court to live in the precinct which he or she will represent. To allowing adequate time for ballot programming and logistics before the March 2024 primary (early voting for which begins on February 20, 2024), the primary candidate filing window closes on December 11, 2023.[4] *See* Tex. Elections Code § 172.023(a). If the County's chosen 2021 Plan is overwritten by district court order to favor a Democrat, there will be no reversing course for the 2024 election to avoid this political result, triggering serious Constitutional implications.

For example, If the district court's injunction remains in place and the 2021 Plan is replaced with Map 1 during that candidate filing window, Republican primary candidates for Precinct 3 under the 2021 Plan would be irreversibly prevented from participating in the 2024 election, even if the 2021 Plan is ultimately vindicated on appeal, because the Republican areas of Precinct 3 in the 2021 Plan are excluded under Map 1's Precinct 3. The inverse is not true. Appellees and the

---

[4] Texas Secretary of State, Important Election Dates 2024, available at https://www.sos.state.tx.us/elections/voter/important-election-dates.shtml (last visited October 17, 2023).

district court have concluded that Democrat Commissioner Stephen Holmes, the incumbent in Precinct 3, is the candidate of choice of coalition voters. *See* ROA.15953 ¶ 198 (stating Commissioner Holmes was consistently elected in Precinct 3). Holmes resides in both versions of Precinct 3 under the 2021 Plan and Map 1. Holmes will be eligible to run for re-election in Precinct 3 whether or not the injunction stands and no matter what the result is of this appeal. The same is not true for potential Republican primary candidates for both Map 1 and the 2021 Plan.

### IV.    The remaining elements of substantial injury and public interest both support a stay of the Order pending appeal.

In considering harm to other parties, the "maintenance of the status quo is important." *Louisiana by & through Landry v. Biden*, No. 22-30087, 2022 WL 866282, at *3 (5th Cir. Mar. 16, 2022). A stay would preserve that status quo to permit this Court to address the difficult legal questions discussed herein, among others (such as whether temporal limits on Section 2 are appropriate, and the appropriate weight courts should give to primary elections, especially in a coalition claim). In these circumstances, the alleged harm of an election under the existing plan should not outweigh the numerous harms of an injunction.

Additionally, where there is a likelihood of success on the merits, the risk of injury to Appellees is diminished—because there are serious challenges to whether a VRA violation occurred. The public interest similarly supports the enforcement of properly enacted laws—including redistricting plans adopted by governmental

bodies within the State of Texas.

### V.     In the alternative, Appellants ask the Court to issue a temporary administrative stay while it considers this motion.

Appellants ask that the Court issue a stay pending appeal. In the alternative, Appellants ask that the Court enter a temporary administrative stay pending its review of this motion. *See In re Abbott*, 800 F. App'x 293, 296 (5th Cir. 2020) (per curiam) (granting temporary administrative stay until further order of the Fifth Circuit "to allow sufficient time to consider" pending emergency motion for stay and mandamus petition).

### CONCLUSION AND PRAYER

This appeal presents a serious question of law for this Court's consideration, of national importance. Appellants make a strong showing they are likely to succeed on the merits, and case law recognizes the irreparable harm that would flow to the County in this redistricting challenge. Should the district court be permitted to significantly alter Commissioners Court boundaries while this appeal is pending, candidates may qualify for an office they ultimately cannot hold, and candidates who *could* hold such office would be prohibited from timely qualifying for, or running for, that office. These harms cannot be avoided without a stay.

Appellants therefore ask the Court to enter an order—staying the district court's final judgment and its November 30, 2023 Order, and from any further action altering the Galveston County Commissioners Court boundaries during the

pendency of this appeal. In the alternative, Appellants ask that the Court enter an administrative stay until it can consider this filing.

**Appellants believe action is needed today, December 1, 2023 due to the district court's order yesterday evening that requires Map 1 govern the Commissioners Court election.**

Respectfully Submitted,

PUBLIC INTEREST LEGAL FOUNDATION

Joseph M. Nixon
Federal Bar No. 1319
Tex. Bar No. 15244800
J. Christian Adams
South Carolina Bar No. 7136
Virginia Bar No. 42543
Maureen Riordan
New York Bar No. 2058840
107 S. West St., Ste. 700
Alexandria, VA 22314
jnixon@publicinterestlegal.org
jadams@publicinterestlegal.org
mriordan@publicinterestlegal.org
713-550-7535 (phone)
888-815-5641 (facsimile)

GREER, HERZ & ADAMS, L.L.P.

By: /s/ *Joseph Russo*
   Joseph Russo, Jr. (Lead Counsel)
   Fed. ID No. 22559
   State Bar No. 24002879
   jrusso@greerherz.com
   Jordan Raschke
   Fed. ID No.3712672
   State Bar No. 24108764
   jraschke@greerherz.com
   1 Moody Plaza, 18th Floor
   Galveston, TX 77550-7947
   (409) 797-3200 (Telephone)
   (866) 422-4406 (Facsimile)

   Angie Olalde
   Fed. ID No. 690133
   State Bar No. 24049015
   2525 S. Shore Blvd. Ste. 203
   League City, Texas 77573
   aolalde@greerherz.com
   (409) 797-3262 (Telephone)
   (866) 422-4406 (Facsimile)

   *Counsel for Defendants*

16

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

1.    This document complies with the word limit of FED. R. APP. P. 27(d)(2)(A) because this document contains **3,387** words which is within the 5,200 word-count limit, excluding the portions exempted by the Rules.

2.    This document complies with the typeface and type styles requirements of FED. R. APP. P. 27(d)(1)(E) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in Times New Roman 14-point font.

*/s/ Angela Olalde*
Counsel for Appellants

Dated: December 1, 2023

## CERTIFICATE OF SERVICE

I certify that, on December 1, 2023, this document and its attachments were electronically served on all counsel of record in this case in accordance with the Federal Rules of Appellate Procedure.

Counsel for "Petteway" Appellees:

Mark P. Gaber
Valencia Richardson
Simone Leeper
Alexandra Copper
Campaign Legal Center
1101 14th NW, Ste. 400
Washington, D.C. 20005
(202) 736-2200 (phone)
(202) 736-2222 (facsimile)
mgaber@campaignlegal.org
vrichardson@campaignlegalcenter.org
sleeper@campaignlegal.org
acopper@campaignlegal.org

Bernadette Samson Reyes
Sonni Watnin
UCLA Voting Rights Project
3250 Public Affairs Bldg.
Los Angeles, California 90095
(310) 400-6019 (phone)
bernadette@uclavrp.org
sonni@uclavrp.org

Chad W. Dunn
Brazil & Dunn
1900 Pearl Street
Austin, Texas 78746
(512) 717-9822 (phone)
(512) 515-9355 (facsimile)
chad@brazilanddunn.com

Neil G. Baron
Law Office of Neil G. Barron
1010 E. Main Street, Ste. A
League City, Texas 77573
(281) 534-2748 (phone)
(281) 534-2748 (facsimile)
neil@ngbaronlaw.com

Counsel for "NAACP" Appellees:

Adrianne M. Spoto
Hilary Harris Klein
Southern Coalition for Social Justice
1415 W. Hwy. 54, Ste. 101
Durham, North Carolina 27707
(919)323-3380 (phone)
(919) 323-3942 (facsimile)
adrianne@scsj.org
hilaryhklein@scsj.org

Andrew Silberstein
Diana C. Vall-Llobera

Michelle Anne Polizzano
Molly Linda Zhu
Richard Mancino
Willkie Farr & Gallagher
787 Seventh Avenue
New York, New York 10019
212-728-8000 (Telephone)
212-728-8111 (Facsimile)
asilberstein@willkie.com
dvall-llobera@willkie.com
mpolizzano@willkie.com
mzhu@willkie.com
rmancino@willkie.com
kgarrett@willkie.com

JoAnna Suriani
Willkie Farr & Gallagher
1875 K Street, N.W.
Washington, DC 20006-1238
(202) 303-1000 (Telephone)
(202) 303-2000 (Facsimile
jsuriani@willkie.com

Hani Mirza
Joaquin Gonzalez
Sarah Xiyi Chen
Christina Beeler
Texas Civil Rights Project
1405 Montropolis Drive
Austin, Texas 78741
(512) 474-5073 (phone)
(512) 474-0726 (facsimile)
hani@texascivilrightsproject.org
joaquin@texascivilrightsproject.org
schen@texascivilrightsproject.org
christinab@texascivilrightsproject.org

Nickolas Anthony Spencer
Spencer & Associates PLLC
9100 Southwest Freeway, Suite 122
Houston, TX 77074
713-863-1409 (Telephone)
nas@naslegal.com

Counsel for the United States of America

Nicolas Y. Riley
Deputy Chief
Civil Rights Division, Appellate Section
U.S. Department of Justice
950 Pennsylvania Ave. NW
Washington, DC 20530
(202) 353-5001 (telephone)
nicolas.riley@usdoj.gov

Matthew Drecun
Civil Rights Division, Appellate Section
U.S. Department of Justice
950 Pennsylvania Ave. NW
Washington, DC 20530
(202) 550-9589 (telephone)
matthew.drecun@usdoj.gov

Daniel David Hu
U.S. Department of Justice
1000 Louisiana Ste. 2300
Houston, TX 77002
713-567-9000 (telephone)
713-718-3303 (facsimile)
daniel.hu@usdoj.gov

Robert S. Berman
Catherine Meza
Bruce I. Gear
K'Shaani Smith
Michael E. Stewart
T. Christian Herren, Jr.

Tharuni A. Jayaraman
Zachary Newkirk
U.S. Department of Justice
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530
202-307-2767 (telephone)
202-307-3961 (facsimile)
robert.berman@usdoj.gov
catherine.meza@usdoj.gov
bruce.gear@usdoj.gov
k'shaani.smith@usdoj.gov
michael.stewart3@usdoj.gov
tharuni.jayaraman@usdoj.gov
zachary.newkirk@usdoj.gov

*/s/ Joseph Russo, Jr.*
Counsel for Appellants

United States District Court
Southern District of Texas
**ENTERED**
November 30, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| TERRY PETTEWAY, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | 3:22-CV-57 |
| | § | |
| GALVESTON COUNTY, TEXAS, | § | |
| *et al.*, | § | |
| | § | |
| Defendants. | § | |

## **ORDER**

On October 13, 2023, this court held that the 2021 commissioners-court precinct map the Galveston County Commissioners Court adopted on November 12, 2021—"the enacted plan"—violated § 2 of the Voting Rights Act. Dkt. 250. The court permanently enjoined the defendants from administering, enforcing, preparing for, or in any way permitting the nomination or election of county commissioners from the commissioners-court precinct map as portrayed in the enacted plan. Dkt. 251 at 1. That same day, it announced a remedial-proceedings schedule that allowed the defendants an opportunity to submit an alternative redistricting plan that complies with § 2 of the Voting Rights Act so that this court could order the adoption of a new redistricting plan before November 11, 2023—the statutory opening date for candidate filing. *Id.* at 2.

EXHIBIT 1

Soon after, the defendants appealed and moved this court to stay its injunction pending appeal. Dkts. 253, 254. After the court denied their motion, they moved the United States Court of Appeals for the Fifth Circuit for the same relief. *Petteway v. Galveston County*, No. 23-40582, ECF No. 13. The Fifth Circuit expedited the appeal and entered a temporary administrative stay until November 10. *Id.*, ECF Nos. 28-2 at 2; 40-1 at 2. On November 10, the Fifth Circuit affirmed the district court's judgment, *Petteway v. Galveston County*, 86 F.4th 214 (5th Cir. 2023), but extended the administrative stay pending an en banc poll, *Petteway*, No. 23-40582, ECF No. 122-2. Following the Fifth Circuit en banc poll, the administrative stay terminated. *Id.*, ECF No. 145-2 at 2.

Given that the candidate-filing period for the 2024 election has already begun and that the defendants' electoral map is enjoined, it is no longer practicable to permit the commissioners court the opportunity to cure its enjoined map's infirmities. *See Veasey v. Abbott*, 830 F.3d 216, 240 (5th Cir. 2016). The court will proceed accordingly to carry out its "unwelcome obligation" to devise and impose a remedy for the 2024 election. *See id.* (quoting *Wise v. Lipscomb*, 437 U.S. 535, 540 (1978)).

The Petteway and NAACP plaintiffs previously asked the court to implement "Map 1," the alternative map that the commissioners court

considered on November 12, 2021, and that is pictured in this order's appendix. Dkts. 241 ¶ 8; 242 ¶ 8; *see also* Dkt. 258-9 at 27. And in their emergency motion for a remedial order, the plaintiffs again ask the court to enter an order that requires Map 1 to be the remedial plan. Dkt. 266 at 2. In its order on the initial motion to stay, the court agreed to implement Map 1 if the defendants failed to, or elected not to, submit a revised plan. Dkt. 255 at 3. Map 1 remedies the vote dilution present in the enacted plan, satisfies all constitutional and statutory requirements, and preserves with "least change" the boundaries of the electoral map adopted in 2011. Accordingly, the court grants the plaintiffs' emergency motion and adopts Map 1 as the remedial plan. Dkt. 266.

The court will hold a telephonic status conference for this case on **Monday, December 4, 2023, at 1 p.m.** to discuss how this matter will proceed to ensure that the 2024 election will be conducted using Map 1. Counsel for each party are ordered to participate in the conference.

Signed on Galveston Island this 30th day of November, 2023.


_____
JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE

# Appendix

