No. 23-40582

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

HONORABLE TERRY PETTEWAY; HONORABLE DERRECK ROSE; HONORABLE PENNY POPE,

Plaintiffs-Appellees

v.

GALVESTON COUNTY, TEXAS; MARK HENRY, in his official capacity as Galveston County Judge; DWIGHT D. SULLIVAN, in his official capacity as Galveston County Clerk,

Defendants-Appellants

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

GALVESTON COUNTY, TEXAS; GALVESTON COUNTY COMMISSIONERS COURT; MARK HENRY, in his official capacity as Galveston County Judge,

Defendants-Appellants

DICKINSON BAY AREA BRANCH NAACP; GALVESTON BRANCH NAACP; MAINLAND BRANCH NAACP; GALVESTON LULAC COUNCIL 151; EDNA COURVILLE; JOE A. COMPIAN,

Plaintiffs-Appellees

v.

GALVESTON COUNTY, TEXAS; MARK HENRY, in his official capacity as Galveston County Judge; DWIGHT D. SULLIVAN, in his official capacity as Galveston County Clerk,

Defendants-Appellants

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

APPELLEE UNITED STATES' REPLY IN SUPPORT OF ITS
MOTION TO AMEND OR CORRECT THE JUDGMENT AND
RESPONSE TO APPELLANTS' MOTION TO AMEND THE JUDGMENT

The United States respectfully submits this reply in support of its Motion to Amend or Correct the Judgment, filed August 16, 2024. The Motion had a simple aim: clearing up an apparent oversight in this Court's remand instructions regarding the United States' discriminatory-purpose claim under Section 2 of the Voting Rights Act (VRA), 52 U.S.C. 10301, in order to avoid confusion and uncertainty in the district court's proceedings on remand.

The response by appellants Galveston County, et al., offers no basis to deny the United States' Motion. Indeed, appellants largely ignore the contents of the

Motion. Instead, they now seek broad relief against all appellees on theories they never previously briefed, and they ask this Court in effect to *reconsider* its judgment on those novel grounds, which are unfounded in any event.

This Court should grant the relief requested in the United States' Motion, and it should deny the relief appellants now seek as impermissible and unwarranted.

## ARGUMENT

**I.     Appellants' arguments against the United States' Motion are meritless.**

A.  Appellants first make the unsupportable argument (Resp. 2) that "[t]his case has always, and only, presented the issue of a coalition's vote dilution" and "[n]o appellee has pled otherwise." This *appeal* has concerned the viability of coalition claims under Section 2's results test. But as the United States detailed in its Motion, the United States and other plaintiffs brought additional claims that the district court declined to reach. *See* Mot. 2-4 & n.1.

Appellants ignore the United States' explanation in its Motion (Mot. 2) that "discriminatory intent" is "an independent basis for liability" under Section 2. *Fusilier v. Landry*, 963 F.3d 447, 463 (5th Cir. 2020) (citing *McMillan v. Escambia Cnty.*, 748 F.2d 1037, 1046 (5th Cir. 1984)). "Congress intended that fulfilling *either* the more restrictive intent test or the results test would be sufficient to show a violation of section 2." *McMillan*, 748 F.2d at 1046; *see also United*

*States* v. *Brown*, 561 F.3d 420, 432 (5th Cir. 2009); *Perez v. Abbott*, 253 F. Supp. 3d 864, 942-943 (W.D. Tex. 2017) (three-judge court).

Before now, appellants repeatedly recognized that the United States has a discriminatory-purpose claim separate from its claim under Section 2's results test. Appellants' motion to dismiss challenged the factual allegations, not the legal viability, of the United States' "intentional discrimination claim" and recognized it was a "Voting Rights Act claim." Doc. 48, at 17, 22.[1] Appellants' motion for summary judgment acknowledged that the United States alleged "intentional racial discrimination under Section 2 of the Voting Rights Act." Doc. 176, at 1.

Appellants' post-trial brief again acknowledged the United States' and other plaintiffs' "Section 2 intentional vote dilution claims," employing the same factual defenses to oppose those claims as they used to oppose the plaintiffs' intentional-discrimination claims under the Fourteenth Amendment. Doc. 244, at 2. And they recognized that a different framework—the *Arlington Heights* factors, not the *Gingles* results framework—governed plaintiffs' "intentional discrimination claim[s] under Section 2 of the Voting Rights Act." *Id.* at 13-14 (citing *Brown*,

---

[1] "Doc. __, at __" refers to the docket entry number and relevant pages of the district court filings below in *Petteway v. Galveston Cnty.*, No. 3:22-cv-57 (S.D. Tex.).

561 F.3d at 433, and *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977)).

Moreover, appellants' proposed findings of fact and conclusions of law recognized both that "[t]here are two types of Section 2 claims—an intent claim and an effects (result) claim" and that the United States "allege[d] a Section 2 violation based on discriminatory intent." Doc. 245, at 10. Even their en banc brief to this Court referred to "the United States' Voting Rights Act *claims*." See Appellants' Supp. En Banc Br. xi (emphasis added).

To the extent appellants seek to argue about the framework governing Section 2 discriminatory-purpose claims, this Court's decision specified that such arguments are to be made to the district court on remand in the first instance. *See* Op. 30 n.13 (identifying "[p]ertinent considerations on remand," including the "analytical framework" for plaintiffs' remaining claims). This is not the time or the place for such arguments because "the issue of intentional discrimination was not part of the district court's Section 2 ruling." Op. 3 n.1.

B. In appellants' next argument, they return to recognizing—as they have done all along—that the United States brought a separate discriminatory-purpose claim under Section 2. Appellants contend (Resp. 3-5) that when the district court *declined to reach* the United States' and other plaintiffs' intentional-discrimination and racial-gerrymandering claims, the court actually *dismissed* them.

This Court already has decided otherwise in remanding for further proceedings on the claims the district court did not reach, and it was correct to do so. As the district court explained in the paragraph following the one that appellants cite, the court "[did] not need to make findings on intentional discrimination or racial gerrymandering" or "determine the outcome of the intentional-discrimination or racial-gerrymandering claims." Doc. 250, at 152-153 ¶ 427. That is because the relief conferred by those claims was not "potentially broader" than the relief available under Section 2's results test. *Ibid.* (quoting *Veasey v. Abbott*, 830 F.3d 216, 230 n.11 (5th Cir. 2016) (en banc)). Indeed, it is longstanding practice in voting litigation to decide only those claims sufficient to confer complete relief and not more.[2]

If there were any doubt about what the district court intended its ruling to do, the United States' Motion provides the solution. Amending this Court's remand instructions to clarify that further proceedings should include the United States' discriminatory-purpose claim will permit the district court itself to say what it meant to do. Appellants can, if they wish, renew their argument that the district

---

[2] *See, e.g., LULAC v. Perry*, 548 U.S. 399, 442-443 (2006); *Escambia Cnty. v. McMillan*, 466 U.S. 48, 51-52 (1984) (per curiam); *Singleton v. Merrill*, 582 F. Supp. 3d 924, 1035 (N.D. Ala. 2022) (three-judge court), *aff'd sub. nom. Allen v. Milligan*, 599 U.S. 1 (2023); *Gingles v. Edmisten*, 590 F. Supp. 345, 353 (E.D.N.C. 1984) (three-judge court), *aff'd in relevant part sub nom. Thornburg v. Gingles*, 478 U.S. 30, 38, 80 (1986).

court already dismissed the United States' discriminatory-purpose claim. For now, this Court needs only to resolve the uncertainty arising from the remand instructions' omission of the United States' discriminatory-purpose claim.

## II. Appellants' sweeping request for relief on all claims is waived, improper, and unfounded.

The United States' Motion to Amend or Correct the Judgment (*see* 5th Cir. R. 27 I.O.P.) asks only for a correction of an apparent oversight in this Court's remand instructions but otherwise conforms to the rulings underpinning the Court's judgment. By contrast, appellants use their response to the Motion to make a sweeping request for relief on all remaining claims—not just the United States' discriminatory-purpose claim, but all other plaintiffs' claims as well. Resp. 5-9. Appellants ask this Court to reconsider its judgment, insinuating that the Court erred by concluding that plaintiffs' unadjudicated claims should be remanded to the district court. Because appellants' request is waived, improper, and unfounded, it should be denied.

A. This Court need go no further than ruling that appellants waived their request for complete relief on all claims by not raising it in their briefing to this Court. Neither their panel briefs nor their en banc brief developed the argument that the United States and other plaintiffs were obligated to "ask for remand before the panel," "file [a] cross-appeal, or brief any alternative grounds for affirmance" in order to obtain the remand contained in this Court's judgment. Resp. 7. "Issues

not briefed on appeal are waived." *Fishback Nursery, Inc. v. PNC Bank, Nat'l Ass'n*, 920 F.3d 932, 940 (5th Cir. 2019) (quoting *Bailey v. Shell W. E&P, Inc.*, 609 F.3d 710, 722 (5th Cir. 2010)).

It is not enough that appellants' opening panel brief and supplemental en banc brief called, in conclusory fashion, for a "take-nothing judgment." Opening Br. 59; Appellants' Supp. En Banc Br. 48. Appellants never explained or cited legal authority to show why such a judgment was merited.

"[M]erely 'intimating' an argument is not the same as 'pressing' it." *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 732 (5th Cir. 2018) (quoting *United States v. Scroggins*, 599 F.3d 433, 447 (5th Cir. 2010)). And "[a] party who inadequately briefs an issue is considered to have abandoned the claim." *Keller v. Fleming*, 952 F.3d 216, 224 (5th Cir. 2020) (quoting *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994)); *see also Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 414 (5th Cir. 2021) ("When a party pursues an argument on appeal but does not analyze relevant legal authority, the party abandons that argument."). Because appellants never sought to explain why they might be entitled to complete relief on all claims, they have waived that relief.

B. Appellants' request for complete relief also amounts to a procedurally improper argument that this Court erred by concluding that plaintiffs' unadjudicated claims should be remanded to the district court.

Appellants' request is in the nature of a petition for rehearing because it implies an error of law in this Court's existing judgment—its tacit denial of relief to appellants on all unadjudicated claims. Petitions for rehearing are required to "state with particularity each point of law or fact that the petitioner believes the court has overlooked or misapprehended." Fed. R. App. P. 40(a)(2). This Court has likewise emphasized the "[l]imited [n]ature" of such post-judgment petitions: they are used "to bring to the attention of the panel claimed errors of fact or law in the [Court's] opinion." 5th Cir. R. 40.2. Appellants do not show that this Court made an error of fact or law in remanding plaintiffs' unadjudicated claims, rather than comprehensively rendering judgment in appellants' favor. Nor could they, because they never even presented that request until now.

C. Appellants' argument is unfounded in any event. As explained above, the district court appropriately declined to consider the United States' and other plaintiffs' intentional-discrimination and racial-gerrymandering claims because they would not have conferred relief any broader than plaintiffs' then-successful Section 2 results claim. To assert that this was erroneous would have been futile, given the longstanding precedent to which the district court's approach adhered. *See* p. 5 & n.3, *supra*.[3]

---

[3] Appellants are mistaken to rely on *Veasey v. Abbott*, 830 F.3d 216 (5th Cir. 2016) (en banc), in arguing that discriminatory-intent claims furnish

For that very reason, cross-appeal would have been improper. "A party who receives all that he has sought generally is not aggrieved by the judgment affording the relief and cannot appeal from it." *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 333 (1980). Thus, this Court has held that "a party may not appeal a favorable ruling 'for the purpose of obtaining a review of findings he deems erroneous which are not necessary to support the decree.'" *United States v. Fletcher ex rel. Fletcher*, 805 F.3d 596, 604 (5th Cir. 2015) (quoting *Deposit Guar. Nat'l Bank*, 445 U.S. at 335). Where there is "nothing unfavorable" to a party "in the district court's *judgment*," cross-appeal is improper, and this Court will not consider it. *Cooper Indus., Ltd. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 876 F.3d 119, 126 (5th Cir. 2017). These principles apply all the more strongly here, where the district court simply declined to reach certain claims and thus made no findings or rulings actually unfavorable to the United States and other plaintiffs.

Moreover, appellants misunderstand the nature of appellate review in suggesting that the United States and other plaintiffs should have raised their

---

"potentially broader" relief. Resp. 8. A finding of discriminatory intent versus discriminatory effect in *Veasey* meant different remedies: "fully enjoin[ing]" the challenged law, a Texas voter-ID requirement, versus relief "tailored to rectify only the discriminatory effect on those voters who do not have . . . or are unable to reasonably obtain [compliant] identification." 830 F.3d at 268, 271. The district court found that no such difference existed here; either way, Galveston County would need to enact a new districting plan. Doc. 250, at 153 ¶ 428.

unadjudicated claims as "an alternative basis to affirm" the district court's judgment. Resp. 8. "[A]s a court of review, not first view, [this Court] generally do[es] not 'decide facts or make legal conclusions in the first instance.'" *Cameron Par. Recreation #6 v. Indian Harbor Ins.*, 92 F.4th 1152, 1155 (5th Cir. 2024) (quoting *Montano v. Texas*, 867 F.3d 540, 546 (5th Cir. 2017)). Instead, when "the district court did not reach [a] claim, the normal course would be to remand for the district court to do so." *Montano*, 867 F.3d at 546; *see also Tennant v. Jefferson Cnty. Comm'n*, 567 U.S. 758, 765 (2012) (per curiam) ("Because the District Court did not reach plaintiffs' claims under the West Virginia Constitution and the issue has not been briefed by the parties, we leave it to the District Court to address the remaining claims in the first instance.").[4]

This Court appropriately remanded for further proceedings on the non-U.S. plaintiffs' unadjudicated claims, and it should amend its remand instructions to make clear that it is doing the same for the United States' Section 2 discriminatory-purpose claim.

---

[4] Appellants say *Tennant* is "distinguishable" because it "lacks any analysis of remand/rendition or waiver." Resp. 7 n.1. But the fact *Tennant* lacks the analysis appellants think is necessary is a compelling indication that appellants understand remand and waiver principles incorrectly.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court amend or correct its remand instructions in its Judgment on Rehearing En Banc to reflect that the district court should also consider the United States' discriminatory-purpose claim under Section 2 of the VRA, and the United States further requests that the Court deny the relief that appellants now seek.

Respectfully submitted,

KRISTEN CLARKE
  Assistant Attorney General

s/ Matthew N. Drecun
ERIN H. FLYNN
MATTHEW N. DRECUN
  Attorneys
  Department of Justice
  Civil Rights Division
  Appellate Section
  Ben Franklin Station
  P.O. Box 14403
  Washington, D.C. 20044-4403
  (202) 550-9589

## CERTIFICATE OF SERVICE

On August 28, 2024, I filed this motion with the Clerk of the Court by using the CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the CM/ECF system.

s/ Matthew N. Drecun<br>
MATTHEW N. DRECUN<br>
Attorney

# CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2) because it contains 2314 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f).  This motion also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it was prepared in Times New Roman 14-point font using Microsoft Word for Microsoft 365.

                                                  s/ Matthew N. Drecun
                                                  MATTHEW N. DRECUN
                                                    Attorney

Date:  August 28, 2024